JAMES *v.* WILSON.

4-4637

Opinion delivered May 10, 1937.

12

*Osborne W. Garvin,* for appellant.

*E. R. Parham* and *Tom F. Digby,* for appellee.

GRIFFIN SMITH, C. J. The chancery court dismissed the petition of Wilma Ketcher James by which she sought to vacate an order confirming a report of commissioners appointed for the purpose of partitioning certain lands in Pulaski county, and to allot the homestead and dower interest of appellant as widow of M. J. Ketcher.

The surviving heirs of M. J. Ketcher were his mother, Annie Ketcher; a brother, Henry Ketcher; a sister, Rose Harrod, and a nephew, William McCallum, the latter being a minor.

M. J. Ketcher had operated a tin, metal, and roofing business. He had accumulated considerable property, alleged in the petition to be worth $88,151, exclusive of "going value."

Soon after the death of M. J. Ketcher, Carrie E. Wilson, who for ten years had been his secretary, was ap-

pointed administratrix of the estate. This was done by agreement, and all of the heirs except the minor signed the bond. The record shows conclusively that, at the time Miss Wilson was appointed, it was hoped that the business might be continued, at least until its value, under changed conditions, could be determined.

The widow's statutory allowances were not claimed or given, nor was quarantine assigned. In her petition she alleges that she was not advised of her legal rights in these respects.

As grounds for setting aside the order of confirmation, appellant alleges: (1) That fraud was practiced by "the other parties in the proceeding" in obtaining the order and decree; (2) that fraud was practiced upon the court by "the other parties" in that assets were concealed from the court and from petitioner; (3) that the commissioners did not, in fact, view and appraise the real and personal property; (4) that petitioner's attorney was attorney for Carrie E. Wilson, individually, and Carrie E. Wilson as administratrix, and all other parties to the proceeding, and that "said attorney represented and was attorney for the heirs-at-law of M. J. Ketcher at all times prior to the filing of the partition proceedings;" (5) that the value of the real estate ·was not disclosed to the court nor to the petitioner; (6)· that the value of the personal property was not properly disclosed to the court; (7) that the fact that Carrie Wilson was operating the business of M. J. Ketcher and Company was not disclosed to the court, and (8) that homestead, and allowances provided by law, were not assigned to petitioner.

The prayer was that the cause be reopened; that commissioners be appointed to appraise the property, both real and personal; that Carrie E. Wilson be required to produce all books and records, together with inventories, etc.; that dower in assets of the estate, formerly concealed, be assigned to petitioner, and that dower in the real estate and personal property be assigned; that her homestead be selected and assigned, and that she be awarded allowances as provided by law.

Carrie E. Wilson was appointed administratrix on October 18, 1934. Five days later—on October 23— through her attorney, Tom F. Digby, she petitioned the probate court for authority to continue the business, and on the same day such authority was granted. Miss Wilson's petition for appointment contained a statement that the personal property was worth $20,000. For three and a half months after her husband's death, appellant was employed by the administratrix to collect rents and was paid $15 per week.

Probate court records do not show that any other proceedings were had prior to January 26, 1935, at which time appellant executed a document entitled "Agreement for Settlement of Interest in Estate." Appellant says that this agreement was prepared by Mr. Digby. It recites a desire to obtain "a complete settlement of all my interest in said estate," and continues: "Now, therefore, for and in consideration of the sum of one dollar, to me in hand paid by the (above mentioned) heirs, I do hereby agree to accept in full and complete settlement of all my interest in and to said estate, the following described property, real and personal." A description of the real property, without evaluation, was set out; also, three real estate notes, aggregating $11,- 515; Home Owners Loan Corporation bonds, $5,000; Arkansas Toll Bridge bonds, $2,000, and Liberty Loan bonds, $2,000. The total of these items of personal property is $20,515. To this was added an automobile and household effects, unevalued.

Another "Agreement for Settlement of Interest in Estate" contains a blank January, 1935, date. It lists four pieces of real property, without evaluation; three real estate notes aggregating, $10,735; HOLC bonds $3,000; State Highway bonds, $2,000; Liberty Loan bonds, $2,000, and cash, $2,000.

On January 29, 1935, Mr. Digby, as attorney for Wilma Ketcher, Harry H. Ketcher, and A. G. McCallum, the latter acting as next friend of William McCallum, minor, filed a petition in chancery court, praying that "all right, title, interest, including the dower and home-

stead interest, of plaintiff, Wilma Ketcher, be assigned and partitioned unto her in fee simple, and that commissioners be appointed to make said assignment." Rose Harrod, Annie Ketcher, C. E. Wilson, and C. E. Wilson as administratrix, answered, denying that the property was susceptible of division in kind, but admitting that the interests of the parties were as alleged in the petition. It was also admitted that the plaintiffs were entitled to the relief prayed for in the complaint. They specifically entered appearances and consented that the court grant the order allotting dower and partitioning the lands, in accordance with the best interests of the parties. The answer was signed by E. R. Parham as solicitor for Rose Harrod and Annie Ketcher.

Carrie E. Wilson answered, alleging her interest to be that of an administratrix. She submitted a list of the real estate, and an inventory of the personal property, and stated that debts owing and unpaid amounted to approximately $8,000; also, the inheritance tax, if any, due the state. The personal property listed amounted to $57,573. Nineteen parcels of real estate were described, without an estimate of values.

The same day the petition was filed, the chancellor found that Wilma Ketcher was endowed with one-half of the real property in fee, and one-half of all the personal property. Interests of the several parties were decreed, including a finding that the administratrix had no beneficial interest in the property, and commissioners were appointed, as requested in the petition.

The report of the commissioners was filed January 29, and contained the following: "We have examined the lands and are of the opinion and find that the same are so situated that they cannot be divided in kind among the owners thereof according to their respective interests therein without great prejudice to said owners, and we further find that it would be to the best interest of the estate and to the parties herein that the following lands be allotted to the said Wilma Ketcher * * * which said lands are less than one-half in value of all the lands of the said M. J. Ketcher, and that she be given the

remainder of her interest in said total estate from the personal property thereof." There was this recommendation: "And after the payment of debts of said estate, that the widow be given the following described personal property, which is less than one-half in value of the personal property of the estate: Note of S. O. and Nellie Carrol, $5,935; note of Mrs. Chas. E. Taylor, $2,500; note of Gladys G., Thomas H., and Harry S. Sharp, $2,280; note of DeWayne Jones, $780; Fourth Liberty bonds, $2,000; Arkansas Toll Bridge bonds, $2,000; Home Owners' Loan Corporation bonds, $7,500; Ford automobile, $600; household furniture and effects, $400." These items total $23,495.

The court approved this suggested settlement. In the order of confirmation the chancellor copied the report of the commissioners, and made the following findings: "And the parties hereto in open court agreeing to the partition and assignment of dower as set out in said report; and the court further finding from the testimony of Henry H. Ketcher, Rose Harrod, C. E. Wilson, Annie Ketcher and Wilma Ketcher, taken orally before the court, that the said lands allotted to Wilma Ketcher, widow of the deceased, are less than one-half in value of the lands of said M. J. Ketcher, and that the personal property, as set out in the report of said commissioners to be allotted to the said Wilma Ketcher, is less than one-half in value of the personal property of the said M. J. Ketcher, deceased; and no cause being shown why said report should not be confirmed * * * the same is hereby declared to be firm and effectual forever."

The specific real property assigned to appellant was then described, and the title was confirmed in appellee, as follows: Lots 1 and 2, block 5, Oakhurst Addition; west 49 feet of lot 3, block 1, Melrose Place Addition; all of lot 9 and part of lot 10 in block 3, Melrose Place Addition; lot 4, block 1, Melrose Place Addition.

It was further ordered that "all taxes and debts and other charges now filed, probated, or hereafter filed or probated within the time prescribed by law, against the estate of M. J. Ketcher, shall be paid by said adminis-

tratrix out of the remaining funds in her hands belonging to the estate; that on the delivery of said personal property heretofore described (referring to personal property of the aggregate value of $23,495 identified in the report and copied in the order of confirmation) to the said Wilma Ketcher, she is hereby directed to execute a complete release to the estate for all of her claims of dower or other interests therein, and that the costs of the action be paid by C. E. Wilson, administratrix."

The order appointing the commissioners contained a finding that the personal property of the estate had a value of $57,573. This value seems to have been fixed by agreement of all parties, and the items making up the total are identified by exhibit "B" to the petition. It listed 26 items, including those assigned to appellant.

On January 29, 1935, appellant executed a release, reciting receipt of certain items of personal property, and releasing the estate of "all claims, interests or demands which I may have or which I may hereafter have against any of the (adverse parties) or the estate of the said M. J. Ketcher, inclusive of any claims which I may now have or which I may hereafter have against said persons or estate as homestead or dower or as widow of the said M. J. Ketcher."

Items listed, with respect to which appellant acknowledged receipt, were: Note of S. O. and Nellie Carroll for $5,935; note of Mrs. Charles E. Taylor for $2,500; note of Gladys G., Thomas H., and Henry S. Sharp for $2,250; note of DeWayne Jones for $780; Fourth Liberty bonds, $2,000; Arkansas Bridge bonds, $2,000; Home Owners' Loan Corporation bonds, $7,500; a Ford automobile, $600; certain household furniture and effects, $400.

These are the items identified in the chancellor's order of confirmation, and are the items appellant agreed to accept in settlement of her apportionment. At the same time she executed a quit-claim deed in favor of Annie Ketcher for life with remainder to William McCallum, Henry Ketcher and Rose Harrod as tenants in common, as to that part of the real estate to which they

were entitled under the decree. She also executed a warranty deed to lot 4, block 1, Melrose Place Addition, in favor of Carrie Wilson. The recited consideration was $10 cash. This is one of the items of real property awarded appellant in the chancellor's order of confirmation.

In testifying in the instant case, Miss Wilson acknowledged that as administratrix she did not file an inventory with the probate court until October 1, 1935— about nine months after the death of the intestate. She said that as secretary to M. J. Ketcher she knew that he owned considerable real property, but did not know about all of it; that about two or three days after Ketcher's death she was advised by appellant that she had been appointed administratrix, affidavit and application for such having been prepared by Mr. Digby; that the value of the personal estate was merely estimated at $20,000; that Digby had been Mr. Ketcher's attorney; that Digby represented or advised her throughout the proceedings, but "I employed Mr. Parham to represent me in the decree;" that Parham was employed at the suggestion of Digby; that after death of her intestate she went with Mrs. Rose Harrod, Henry Ketcher and Annie Ketcher to Digby's office, and "Mr. Digby represented all of us to a certain extent."

She testified that $79 on deposit in the Twin City Bank was "overlooked;" that interest collected on securities and notes from October 15 to January 29 amounted to $181.74, which was not on the statement available to the chancellor; that she had collected $1,688.69, but that of this amount only $607 was collected between October 15 and January 29; that these rents were accounted for on her books, but not included in the inventory; that as administratrix she was not advised that she would be entitled to a fee of $1,618 on $48,966 of assets; that she did not tell appellant, about January 15, 1935, that to the best of her knowledge the estate was worth approximately $70,000; that she knew about the L. M. Gordon note for $1,706.70, and it was left out of the inventory through oversight; that a note of $225

executed by Harry Hill was likewise overlooked; that the list of personal property and real estate filed in the chancery court had been seen by appellant before the chancery proceedings were instituted; that she would estimate the good will of Ketcher & Company at $3,000, and this item was not included in the inventory; that information in her possession was available alike to all of the interested parties, but appellant did not examine these records, although she did look over the list made up by witness; that she was living in the house deeded to her by appellant; that Mr. Digby delivered the assigned securities to appellant; that she (witness) had formerly had possession of the securities as administratrix, but gave them to Mr. Digby the day the partition order was entered; that appellant, after receiving the personal property, brought notes back to witness and asked her to assist with collections; that for a long time witness did not charge appellant anything for making collections, but later made a charge of 2½ per cent.; that witness continued to make collections for appellant until February or March, 1936, at which time appellant made demand for an additional allowance; that accounts receivable at the time Ketcher died amounted to about $2,000, with stock, tools and equipment amounting to $750; that no itemized list of such was furnished appellant; that an item of $2,500 listed among the debts as "cost of administration" included an estimate of attorneys' fees and cost of administration.

It was shown that $1,963.87 was paid the state. The amount was remitted by Mr. Digby with a letter to the Revenue Department dated November 7, 1935. In this settlement, indebtedness of the Ketcher estate was represented to be $8,561.67, including delinquent general taxes, $1,455.10; delinquent special taxes, $3,922.91, and "cost of administration, $2,500." The same witness (W. A. Jackson, attorney for the Revenue Department) testified that according to the files, that portion of the settlement showing interest of appellant, upon which inheritance tax was payable, amounted to $44,075, with exemptions of $6,000, and that the tax on the difference

of $38,075 would be $1,123.02. Of the total of $1,963.87 paid, $57.20 was interest.

W. E. Porterfield, one of the commissioners, testified that he viewed the real property in company with the other two commissioners, and that Mr. Digby prepared the report he read; that they accepted the list of personal property as prepared by Mr. Digby, and presumed it was correct; that the value of the real estate was estimated about four months later. "Mr. Digby told me that an agreement had been made, and we did not set aside any piece of property as the widow's homestead, nor was she requested to make a selection. It was understood that the deficiency in the 50 per cent. of the real estate to Wilma Ketcher was to be made up from the personal property. I would not have made the report had the contrary been true." The testimony of DeWayne Jones, another commissioner, was substantially the same.

Appellant testified that she had her first conference with Mr. Digby about two days after her husband died; that Digby suggested the appointment of Miss Wilson as administratrix, and appellant approved; that she was not advised what her statutory allowances were, but Digby did tell her the widow would be entitled to one-half of the estate, without informing her as to its value; that he did not tell her he was representing the other parties, but did tell her he was representing the estate and that he had a conference with the other members of the Ketcher family, and explained what they would give in settlement; that he never showed her an inventory of the property, although she saw a list of the real estate described by lot and block numbers; that she was about 26 years of age, unfamiliar with real estate, bonds, and securities, and ignorant as to the value of real estate; that Mr. Digby first told her the value of the estate was $20,000; that up to the time of filing the partition suit she was never advised as to the value of the property; that she signed the agreement based upon information of the administratrix that the estate was worth $70,000; that an agreement of settlement signed by her

before the partition report was confirmed listed an undivided one-half interest in lot 8, block 3, Melrose Place Addition, which was omitted from the final settlement, but according to this agreement she was to receive HOLC bonds of the value of $3,000, instead of $5,000, as subsequently provided; that the decree awarded her $7,500 in HOLC bonds, but she gave $2,500 of these to Mr. Digby, who stated that they were for his fee and taxes; that she did not know whether he referred to general taxes, or inheritance taxes.

She also testified that Digby had told her the estate would pay his fee and everything appellant got would be clear; that on the property awarded her she was required to pay $323.35 delinquent taxes for 1934-1935; that the warranty deed to Carrie Wilson was signed in Mr. Digby's office after the chancellor's decree had been rendered, and that the property so deeded was worth $1,800. "Mr. Digby told me Mrs. Annie Ketcher could not deed any of her property on account of the minor, and he wanted me to give a quit-claim deed so Miss Wilson could have the property. He told me I wouldn't be giving the property away, that it wasn't mine, that it belonged to the other side, the heirs * * *. I am seeking by my petition one-half of $88,151, plus one-half of the property not accounted for * * *. The agreement called for $5,000 HOLC bonds and Mr. Digby told me the $2,500 was to be taken out of the estate for legal expenses and immediate expenses. I did not expect to keep the $2,500 any way; it was to pay the taxes and attorneys' fees, and he made a full disclosure of it. He did not give me a statement showing what he did with the $2,500; so far as I know it was expended for things it was supposed to be expended for * * * Mr. Digby told me he was.attorney for the estate and that he was working it out the best way he could. He didn't tell me he was attorney for the heirs-at-law."

It is contended by appellant that in addition to the appraised value of the estate, $88,151, certain omitted items would bring the total value to $90,950.54, and that appellant was entitled to one-half of this sum, or $45,-

475.27, but received only $23,995 in personal property and $9,300 in real property, or a total of $33,295. From the real estate she deeded property of the value of $1,800 to Carrie E. Wilson, and turned over $2,500 in HOLC bonds to Digby, leaving net $28,995.

(1) The first assignment of error is that fraud was practiced on the court in obtaining the decree. Our conclusion is that the testimony falls far short of establishing intentional fraud. It is apparent that an error was made in not including the Gordon note in the inventory; also, the deposit of $79 in the North Little Rock bank was overlooked, and so was the Hill note of $225.

(2) It is not shown that assets were purposely concealed, although certain items were inadvertently omitted from the inventory.

(3) Two of the commissioners testified that they viewed the real property, and this testimony was not controverted by any one in possession of the facts.

(4) The evidence is not sufficient to reflect upon the ethics or professional conduct of Mr. Digby or Mr. Parham. Taken as a whole, it is apparent that Mr. Digby's entire purpose was one of helpfulness, and appellant must have known of his relations with the other parties.

(5) The value of the real estate was estimated and conjectural, but the conduct of all parties to the record indicates, based upon available information, that there was an agreement as to values, and appellant is bound by her own acts.

(6) We agree with appellant that the value of the personal property was not disclosed to her, but no affirmative duty rested on those adversely interested to do more than they did—that is, supply a list of the property.

(7) The allegation that Carrie E. Wilson, as administratrix, was operating the business, and that this fact was not disclosed to the chancellor, is without merit.

(8) Failure of appellees to assign homestead and "allowances provided by law" was of no importance in view of appellant's agreement, made in open court.

Appellant knew that the business had been operated from the death of her husband to January 29, 1935, at which time the settlement was made, and she knew that rents had been collected. In fact, she made some of the collections. Any interest she had in the item of $607 was merged with the settlement. The same is true with respect to interest of $181.74 on the securities. Appellant's act in turning over to Mr. Digby $2,500 of HOLC bonds after they had been awarded her by the court was voluntary, and she is estopped to complain. She also voluntarily executed a quit-claim deed to Carrie Wilson, involving part of the real property decreed to her, and the transaction will not be disturbed.

Although the first installment of general taxes was not due at the time the settlement was made, such taxes had matured and their liens attached. One item is $108.75 and another is $85.95, each for, 1934, general taxes, a total of $194.52, payment of which is directed in the decree under its general terms. Special taxes of $128.83 are listed for 1935. There is no evidence showing when the special assessments fell due.

The Gordon note of $1,706.70; the bank deposit of $97, and the Hill note for $225, were unintentionally omitted from the various lists. Appellant's one-half interest in these items, if assigned specifically, would amount to $1,014.35. It is the view of the writer, concurred in by Mr. Justice SMITH, that the decree should be modified by awarding this item, and that to it should be added the general tax item of $194.52, or a total of $1,208.87, with interest at six per cent. from January 29, 1935. It is the opinion of a majority, however, that the record clearly discloses that appellant received preferential consideration and exercised an independent choice in the selection of the assets she received, and that the chancellor was correct in dismissing the complaint for want of equity.

Affirmed.